UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 03-30309-MAP

SHARI LITTLEWOOD,

       Plaintiff,

v.

MICHAEL J. RACICOT, Former Town
Administrator for the TOWN OF ORANGE
and THE TOWN OF ORANGE,

       Defendants

MEMORANDUM IN SUPPORT
OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

I.      <u>INTRODUCTION</u>

      This action arises from the decision of defendant Michael Racicot ("Racicot"), Town Administrator for the Town of Orange ("Town"), to suspend plaintiff Shari Littlewood ("Littlewood") for three days from her position as Clerk of the Town's Board of Assessors.  The Town subsequently rescinded the suspension, and awarded full back pay to Littlewood.

      Count I of the Complaint, brought pursuant to the Massachusetts Civil Rights Act, G.L. c.12, §§H-I (the "MCRA"), asserts that Racicot suspended plaintiff in retaliation for the exercise of her right to free speech, in violation of the First Amendment, and also asserts that the suspension violated her rights under the Equal Protection Clause.  <u>Complaint</u>, ¶¶43-44.  Count II asserts that Racicot discriminated against plaintiff on the basis of her gender, in violation of G.L. c.151B.  <u>Complaint</u>, ¶48.  Counts III, IV and V, respectively, assert intentional tort claims against Racicot for defamation, interference with contractual relations, and infliction of emotional distress.  Count VI asserts a claim for negligence against the Town, pursuant to the Massachusetts Tort Claims Act, G.L. c.258.

This Memorandum is submitted in support of the Defendants' Motion for Summary Judgment on all counts.

II.     STATEMENT OF UNDISPUTED FACTS

The facts underlying this case are set forth in the Defendants' Local Rule 56.1 Statement of Material Facts of Record, filed herewith.

III.     ARGUMENT

A.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter law." Fed.R.Civ.P. 56(c). Summary judgment should be entered where the non-moving party has the burden of proof and, based on the record before the Court, "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987).

B.     Background to Complaint[1]

The controversy underlying this case arose in connection with preparation of the Town's "recapitulation sheet" (the "recap sheet"). The recap sheet is a compilation of the Town's projected revenues and appropriations, which must be submitted to and certified by the state Department of Revenue ("DOR") each year before the Town may send out its tax bills. Statement, ¶5. Once completed, the recap sheet must be signed by various Town officials, including at least two members of the Town's Board of Assessors, before it is submitted to DOR. Id.

---

[1]The following is a summary of events leading to the Complaint. A more detailed account of the facts underlying this action is included in the Defendants' Statement of Facts, filed herewith.

At the time of the incidents underlying the Complaint, plaintiff Littlewood served both as an elected member of the Board of Assessors, and as Clerk of the Board of Assessors, an appointed position. Statement, ¶¶1,3. When Racicot was hired as Town Administrator, he was informed by the then-Town Administrator that he would supervise Littlewood, as the Town Administrator is responsible for supervising all Selectmen appointees. Statement, ¶4. Racicot was also responsible for evaluating Littlewood's performance as assessors' clerk. Statement, ¶4.

Littlewood's duties as clerk included preparing the recap sheet for signature by various Town officials, including the assessors, though she was not, as clerk, responsible for obtaining the signatures. Statement, ¶¶5, 6.

Littlewood claims that, as she was preparing the recap sheet in the fall of 2000, she calculated that the property tax rate had increased due to the Town's decision to establish a "reserve account" for its ambulance service. Statement, ¶7. The reserve account, which is authorized by G.L. c.40, §5F, had recently been approved by the Town's Board of Selectmen.[2] Statement, ¶8. Creation of the reserve account required a one-time infusion of funds from the Town's General Fund, and Littlewood asserts that these start-up costs resulted in a tax increase which required, but did not have, the approval of Town Meeting. Statement, ¶9. Littlewood raised this issue with the other assessors and the assessors, through Chairman Stephen Adams, raised the issue at a Selectmen's meeting. Statement, ¶10. Littlewood herself did not speak at this meeting. Id.

Racicot disputes Littlewood's assertion that a Town Meeting vote was required to address the potential tax increase cited by Littlewood. Statement, ¶11.

---

[2] The reserve account was expected to make the ambulance service self-sufficient (it had been funded by the Town's tax receipts), as fees collected from ambulance users would be deposited into the account and then used to pay operating costs. Statement, ¶8.

Between Monday, October 9, 2000, and Thursday, October 12, 2000, Racicot asked Littlewood for the completed recap sheet several times. Statement, ¶13. At first, Littlewood told Racicot that the recap sheet had been completed except for the assessors' signatures, which she would obtain at their next meeting. Statement, ¶14. At this point, Littlewood had prepared the recap sheet without the ambulance reserve account item, but she did not so inform Racicot, or raise any issue about the reserve account with him. Id.

On Thursday, October 12, Littlewood still had not submitted the recap sheet, and Racicot directed her to have it to him by the end of the day. Statement, ¶16. Littlewood did not submit the paperwork to Racicot by the end of the day; nor did she offer Racicot an explanation why. Statement, ¶17.

On Friday, October 13, Racicot called Littlewood to his office and asked for the recap sheet; Littlewood did not respond, but instead turned around and went back to her office. Statement, ¶18. Later that morning, Racicot went to Littlewood's office and again asked for the recap sheet; at this point Littlewood indicated the sheet was in her inbox, and Racicot took it. Statement, ¶19. Littlewood admits that, when she submitted the recap sheet to Racicot, the sheet did not include a line item for the ambulance reserve account, though she did not so inform him. Id. Littlewood also admits that one of the items on the recap sheet had to be changed due to an error, though she asserts that the error was made by the Town Accountant. Id. Racicot asserts that the recap sheet submitted by Littlewood was missing several pages, and several required signatures. Statement, ¶20.

Later that day, Racicot issued Littlewood notice that he was suspending her for three days for "insubordination and failure to perform duties." Statement, ¶22. Racicot asserts that he suspended Littlewood because she (1) failed in her duties as a clerk to complete the recap sheet; (2) told him that the sheet was completed when it was not; and (3) yelled at him when the issue

4

of the recap sheet was raised during a meeting attended by several other Town officials. <u>Statement</u>, ¶23. Littlewood asserts that the reasons cited by Racicot are a pretext, and that he suspended her because she refused to sign the recap sheet, as an assessor, due to her concern over the line item for the ambulance reserve account. <u>Statement</u>, ¶24. Thus, plaintiff claims, the suspension comprises constitutional and common-law tort violations, as set forth in the Complaint. For the reasons described below, Racicot and the Town submit that plaintiff cannot establish any of her claims.

     C.     <u>Plaintiff Fails to Establish that the Suspension Violated Her First Amendment Rights (Count I)</u>

Count I of the Complaint asserts that Racicot suspended plaintiff in retaliation for the exercise of her right to free speech, in violation of the First Amendment. <u>Complaint</u>, ¶43. To establish her First Amendment freedom of speech claim, plaintiff must show that (1) she made a "statement" as a citizen upon a matter of public concern; (2) her and the public's First Amendment interests outweighed the employer's interest in the efficient performance of the workplace; and (3) her protected "statement" was a substantial or motivating factor in an adverse employment action. <u>See</u> <u>Tang</u> v. <u>State of R.I., Dep't of Elderly Affairs</u>, 163 F.3d 7, 12 (1st Cir. 1998); <u>O'Connor</u> v. <u>Steeves</u>, 994 F.2d 905, 912-13 (1st Cir.1993). As explained in detail below, plaintiff fails to establish her First Amendment claim because she cannot show either that (a) she made any "statement" entitled to First Amendment protection; or (b) that the suspension was based on any such protected statement.

     1.     <u>Plaintiff Did Not Make A "Statement" Entitled to First Amendment Protection</u>

As noted, Littlewood claims that Racicot suspended her because she refused to sign the recap sheet, and that the suspension thus violated her First Amendment rights. <u>Complaint</u>, ¶¶30, 43. Even assuming, <u>arguendo</u>, that the suspension was based on Littlewood's refusal to sign the

recap sheet, plaintiff's First Amendment claim fails because her refusal to sign the recap sheet was not a "statement" entitled to First Amendment protection.

In evaluating whether allegedly expressive conduct – such as the refusal to sign the recap sheet – is entitled to First Amendment protection, the Court "focuses on the context in which the conduct took place, asking 'whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who perceived it.' " Meaney v. Dever, 326 F.3d 283, 287 (1st Cir. 2003) (quoting Texas v. Johnson, 491 U.S. 397, 404, 109 S.Ct. 2533 (1989); see also Conward v. Cambridge School Committee, 171 F.3d 12 (1st Cir. 1999) (quoting Spence v. Washington, 418 U.S. 405, 409-11, 94 S.Ct. 2727 (1974) ("the First Amendment protects only … expressive conduct that is 'intended to convey a particularized message' under circumstances in which 'the likelihood is great that the message would be understood by those who view it.'"). Certain conduct – such as flag burning, picketing, and distributing pamphlets – is "readily understood expressive conduct of inherent First Amendment significance." Meaney, 326 F.3d at 287-288; see also Johnson, 491 U.S. 397, 109 S.Ct. 2533. But where conduct is not an expressive act *a fortiori*, it "does not implicate the First Amendment unless context establishes it as such." Meaney, 326 F.3d at 288.

For example, in considering a police officer's blowing of a car horn outside of City Hall during the Mayor's inauguration, the First Circuit opined that – even accepting plaintiff's claim that the act was meant to convey a "message of solidarity" with union members who had just concluded a picket – "it is doubtful that the context of [plaintiff's] hornblowing made it likely that those to whom it was directed took from it the specific 'message of solidarity' that [plaintiff] has since identified."[3]

---

[3]Because the defendant City did not argue below that the hornblowing was not expressive conduct, the First Circuit assumed it was, "despite [its] misgivings." Meaney, 326 F.3d at 288-89. The Court went on to find that the conduct still was not protected because it did not relate to a matter of public concern. Id.

Similarly, in Conward, supra, the First Circuit held that a school teacher's act of handing a questionnaire containing swear words to a student was not protected expressive conduct, because it was "highly unlikely that an adolescent pondering the lascivious questions … would have understood that message" allegedly intended by the teacher (demonstrating that swear words are inappropriate for a scholastic environment). Conward, 171 F.3d at 22. Further, in Solimeno v. State Racing Com'n, 400 Mass. 397, 404, 509 N.E.2d 1167 (1987), the Court held that the boycott of a racing track by kennel owners and greyhound trainers did not constitute protected expressive conduct, because "we are not told what idea or information, if any, was expressed or intended to be expressed by the boycott, and we discern none."

In this case, the record is devoid of evidence from which this Court could infer that Littlewood intended to convey any particular message by refusing to sign the recap sheet. Indeed, her conduct undermines any such conclusion.

As noted above, when Racicot first asked Littlewood for the completed recap sheet, she did not express any concern about the ambulance reserve account, but rather misinformed Raciot that the paperwork was complete except for the assessors' signatures, which would be obtained at the assessors' next meeting. Statement, ¶14. This statement expressly negates any argument that Racicot should have inferred that Littlewood refused to sign the sheet as a political statement.

When Racicot renewed his requests for the paperwork, Littlewood simply ignored him: She did not meet the deadline Racicot set on Thursday, October 12, with no explanation why, Statement, ¶17; then, when Racicot asked her for the recap sheet the following day, she turned around and went back to her office without responding at all. Statement, ¶18. When she finally submitted the recap sheet to Racicot, she did so without even informing him that it did not

include the ambulance reserve item.  Statement, ¶19.  When Racicot subsequently attempted to address the incomplete nature of the sheet, Littlewood stated that she "really didn't want to discuss this with him anymore."  Statement, ¶22.

Littlewood's conduct – which ranged from ignoring Racicot's requests for the completed paperwork, to misrepresenting the paperwork's status – did not manifest any intent to convey a message regarding the ambulance reserve account.  Indeed, as noted, her statement that the assessors would sign the sheet at their next meeting, and, more particularly, her submission of the sheet without informing Racicot that it omitted the ambulance account item, more reasonably indicate an attempt to deceive Racicot into thinking that she had completed the task as requested, than an intent to convey any message of public interest.[4]

Even assuming, arguendo, that plaintiff intended to convey some message by refusing to sign the sheet, the likelihood is not "great that the message would be understood by those who perceived it."  Meaney, 326 F.3d at 287.  As a preliminary matter, plaintiff has not identified to whom she intended to convey any message about the ambulance account.  Contrast Meaney, 326 F.3d at 287 (plaintiff claimed that he intended to convey message to members of public attending Mayor's inauguration).  Notwithstanding, an individual observing Littlewood's conduct could not have reasonably understood any message that she might have allegedly been trying to convey, since, in context, the conduct indicated simply an attempt to delay completion of the paperwork.  This is particularly so since, as noted, preparing the recap sheet as a clerk did not require her to sign it as an assessor.  Statement, ¶6.  Thus, Littlewood's act of refusing to sign the

---

[4] To the extent that plaintiff claims her attendance at the October 4, 2000 Selectmen's meeting with the other assessors indicates an attempt to convey a message about the reserve account, such an argument is unavailing.  First, plaintiff testified that she made no statement at the meeting, and thus did not convey any message of her own.  Statement, ¶10.  Moreover, there is no evidence that any of the assessors indicated that they would not sign the recap sheet because of the reserve account.  The evidence indicates, rather, that the assessors were simply bringing the issue regarding the tax increase to the Selectmen's attention.

recap sheet "did not have sufficient communicative elements" to constitute protected expressive conduct, and her First Amendment claim should be dismissed.

      2.      Plaintiff Cannot Show That the Suspension Was Based on Her Refusal to Sign the Recap Sheet

Even assuming, <u>arguendo</u>, that plaintiff's refusal to sign the recap sheet was a form of protected expressive conduct, plaintiff's First Amendment claim still fails because she cannot show that her refusal to sign the sheet was "a substantial or motivating factor" in the decision to suspend her. <u>Tang</u>, 163 F.3d at 12.

Racicot testified that he suspended Littlewood for insubordination and failure to perform her duties as a clerk, because she failed to complete the recap sheet, told him that the sheet was completed when it was not, and yelled at him during a meeting of Town employees. <u>Statement</u>, ¶23. As a preliminary matter, Littlewood admits that she indicated to Racicot that the sheet was completed, even though it did not contain the ambulance reserve account item, and contained an error. <u>Statement</u>, ¶19. Thus, plaintiff's own testimony substantiates Racicot's claim that he suspended her because of her failures as a clerk, rather than her refusal to sign the recap sheet as an assessor.

More significantly, plaintiff's claim that Racicot suspended her for refusing to sign the recap sheet is refuted by the fact that neither of the other two assessors signed the recap sheet, <u>yet Racicot did not address the issue with either of them</u>. <u>Statement</u>, ¶25. Submission of the recap sheet to DOR required the signatures of at least two assessors; thus, plaintiff's signature, on its own, was irrelevant. <u>Statement</u>, ¶5. Yet Littlewood testified that Racicot never discussed the recap sheet with either of the other two members. <u>Statement</u>, ¶25. This testimony negates her claim that Racicot suspended her because she refused to sign the sheet, since her signature alone would not complete the sheet. Thus, her refusal to sign could not have been "a substantial

or motivating factor" in the decision to suspend her, and plaintiff's First Amendment claim fails

on this additional basis.  <u>Tang</u>, 163 F.3d at 12.

      D.      Plaintiff Fails to Establish that the Suspension Violated Her Equal Protection
                  Rights (Count I) or Chapter 151B (Count II)

To establish both her Equal Protection and Chapter 151B claims, plaintiff must identify

specific instances where persons similarly situated in all relevant aspects were treated differently.

<u>See</u> <u>Rubinovitz</u> v. <u>Rogato</u>, 60 F.3d 906, 910 (1st Cir. 1995) (Equal Protection); <u>Matthews</u> v.

<u>Ocean Spray Cranberries, Inc.</u>, 426 Mass. 122, 129, 686 N.E.2d 1303 (1997) (Chapter 151B).

<u>See also</u> <u>Smith</u> v. <u>Stratus Computer, Inc.</u>, 40 F.3d 11, 17 (1st Cir.1994) (c. 151B plaintiff must

identify other employees to whom she is similarly situated in all relevant respects, "without such

differentiating or mitigating circumstances that would distinguish their situations"); <u>City of

Boston</u> v. <u>Massachusetts Com'n Against Discrimination</u>, 47 Mass.App.Ct. 816, 821-22, 717

N.E.2d 259 (1999) ("[n]o case of disparate treatment under G.L. c. 151B is complete without

proof … that similarly situated employees were treated differently").[5]  Plaintiff's Equal

Protection and c.151B claims fail because she does not identify any similarly situated individuals

who were treated differently from her.

Plaintiff claims that the suspension violated her Equal Protection rights, and her right to be

free from gender discrimination under c.151B, because Racicot "did nothing to the male

members of the Board of Assessors, both of whom could have signed the authorization."

<u>Complaint</u>, ¶49.  This assertion ignores a dispositive distinction between Littlewood and the

---

[5]With respect to plaintiff's Chapter 151B claim, defendants address only the third prong of the familiar <u>McDonnell
Douglas</u> burden-shifting framework that is applied to c.151B claims where, as here, there is no direct evidence of
discrimination.  <u>See</u>, 331 F.3d at 173 (<u>citing</u> <u>McDonnell Douglas Corp.</u> v. <u>Green</u>, 411 U.S. 792, 804-05, 93 S.Ct.
1817 (1973)).  Defendants assume, <u>arguendo</u>, that plaintiff has satisfied her initial burden of establishing a prima
facie case of discrimination.  Similarly, Racicot meets his burden of providing a non-discriminatory reason for the
suspension, i.e. insubordination and failure to perform job duties.  The ultimate burden thus lies on plaintiff to show
that Racicot's articulated reasons were a pretext, or "a coverup for a discriminatory decision." <u>Benoit</u> v. <u>Technical
Mfg. Corp.</u>, 331 F.3d 166, 174 (1st Cir. 2003).  As noted, to demonstrate pretext, plaintiff must identify similarly
situated employees who were treated differently.  <u>Id</u>.

male assessors: That is, that she was also the <u>Clerk</u> of the Board of Assessors, while the other assessors were not.  As Clerk, plaintiff was an employee of the Town, at least partially under the authority and supervision of Racicot.  <u>Statement</u>, ¶4.  Thus, Racicot had authority to suspend Littlewood for actions that he viewed as contrary to her duties as a Town employee, whereas Racicot had no such authority over the other, male assessors.  Indeed, Racicot testified that he pushed the issue of completion of the recap sheet with Littlewood, as opposed to the other assessors, because "she was the clerk."  <u>Statement</u>, ¶26.  Certainly, this distinction comprises "differentiating or mitigating circumstances that would distinguish their situations" such that Littlewood was not similarly situated to the male assessors, and thus cannot maintain a Chapter 151B or Equal Protection claim.  <u>Smith</u>, 40 F.3d at 17; <u>see also</u> <u>Wojcik</u> v. <u>Mass. State Lottery Comm'n</u>, 300 F.3d 92, 104 (1st Cir.2002) (rejecting equal protection claim of discharged employee who "failed to identify specific evidence concerning similarly situated individuals who received more lenient treatment"); <u>Rubinovitz</u>, 60 F.3d at 910 (rejecting equal protection claim of landowners who were denied zoning variance, where landowners "neither identify others who were similarly situated, nor do they identify any instances of disparate treatment").

     E.    <u>Count I  Also Fails Because Plaintiff Does Not Satisfy the Elements of the MCRA</u>

     Plaintiff purports to bring her First Amendment and Equal Protection claims pursuant to the procedural conduit of the MCRA.  <u>Complaint</u>, ¶44.  However, in order to sustain a claim under the MCRA, plaintiff must demonstrate that Racicot violated her constitutional rights by means of "threats, intimidation, or coercion."  <u>See</u> G.L. c.12, §§11H-I; <u>Kelley</u> v. <u>LaForce</u>, 288 F.3d 1, 10 (1st Cir. 2002).  Here, plaintiff appears to claim that the threat of suspension, or the suspension itself, constitutes the requisite threats, intimidation or coercion.  <u>Complaint</u>, ¶44. This theory, however, is at odds with relevant caselaw.  The suspension itself cannot suffice to sustain an MCRA claim because "[a] direct violation of a person's rights does not by itself

involve threats or measures of intimidation, or coercion, and thus does not implicate the [MCRA]." Longval v. Commissioner of Corrections, 404 Mass. 325, 333, 535 N.E.2d 588, 593 (1989). Similarly, the courts have rejected the theory that a "threat" of adverse job action may form the basis of an MCRA claim. See French v. United Parcel Service, Inc., 2 F.Supp.2d 128, 133 (D.Mass. 1998) (potential loss of at-will employment does not constitute "threats, intimidation or coercion" within the meaning of MCRA); Webster v. Motorola, Inc., 418 Mass. 425, 637 N.E.2d 203, 206 (1994) (conditioning of continued employment on participation in drug testing program did not "interfere" with employees' right to privacy within meaning of MCRA. As plaintiff identifies no means of threats, intimidation or coercion engaged in by Racicot, her MCRA claim must be dismissed.[6]

    F.    <u>Plaintiff Fails to Establish Her Intentional Tort Claims (Counts III-V)</u>

Plaintiff claims that, in addition to violating her civil rights, the suspension constituted the intentional torts of defamation, interference with contractual relations, and reckless and/or intentional infliction of emotional distress. Judgment should enter for Racicot on each of these claims for the reasons described below.[7]

    1.    <u>Defamation (Count III)</u>

Plaintiff claims that Racicot defamed her when, at the public hearing convened at her request to grieve the suspension, he informed the Town's Human Resources Board ("HRB") that she had lied to him about the status of the recap sheet. Complaint, ¶53. As a preliminary matter, plaintiff cannot maintain a claim for this tort because she offers no evidence that Racicot's statement damaged her reputation in the community, or harmed her professional reputation, an

---

[6] Plaintiff's First Amendment and Equal Protection claims also fail as against the Town because "a municipality cannot be sued under the MCRA." Kelley, 288 F.3d at 11 n.9.
[7] Plaintiff's intentional tort claims may not be brought against the Town, as the Town is immune from liability for intentional torts. See G.L. c.258, §10(c).

essential element of a defamation claim.  See White v. Blue Cross and Blue Shield of
Massachusetts, Inc., 442 Mass. 64, 66 and 69 n.10,  809 N.E.2d 1034 (2004).

Further, Racicot's statement cannot give rise to a defamation claim because it is
conditionally privileged, as he made the statement in his capacity as Town Manager, while
performing duties required of the position.  See Mulgrew v. City of Taunton, 410 Mass. 631,
635, 797 N.E.2d 381 (1991) ("[s]tatements made by public officials while performing their
official duties are conditionally privileged").  An employer or supervisor has a conditional
privilege to disclose defamatory information about an employee "when the publication is
reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to
perform his or her job."  Foley v. Polaroid Corp. 400 Mass. 82, 94-95, 508 N.E.2d 72 (1987).
See also Draghetti v. Chmielewski, 416 Mass. 808, 814, 626 N.E.2d 862 (1994) ("[s]tatements
made to a narrow group who share an interest in the communication are circumstances in which
an employer typically has a conditional privilege to make defamatory statements").  Disclosure
of the fact that an employee lied about job performance certainly serves the Town's legitimate
interest in retaining honest, competent employees.  And, Racicot's statement was made to a
narrow group, the HRB, that certainly shared an interest in the communication, as it was charged
with determining whether the suspension was justified.[8]  As such, Racicot's statement was
conditionally privileged, negating plaintiff's defamation claim.  Compare Mulgrew, 410 Mass.
631, 797 N.E.2d 381 (police chief was privileged in informing city council that plaintiff was
unfit for reinstatement due to poor performance and suspicious behavior as a former police
officer, because "[t]he public has an interest in having a police force comprised of competent and
able individuals," and chief communicated the information to those responsible for police
administration).

---

[8] Plaintiff cannot complain about disclosure to members of the public who attended the hearing, as the hearing was
open to the public at plaintiff's request.  Statement.

2.    Interference with Advantageous Business Relations (Count IV)

Plaintiff claims that Racicot's conduct constituted interference with her advantageous business relationship with the Town.  Complaint, ¶58.  However, plaintiff admits that she suffered no economic loss as a result of the incidents underlying the Complaint, as the Town rescinded the three-day suspension and awarded her full back pay.  Statement, ¶¶31-32.  Absent economic loss, a plaintiff cannot maintain a claim for interference with advantageous business relations, and therefore, Count IV must be dismissed.  See Lynch v. Boston, 180 F.3d 1, 19 (1st Cir.1999) (there can be no recovery for reputational damages under theory of interference with contractual relations); Tech Plus, Inc. v. Ansel, 59 Mass.App.Ct. 12, 17-18, 793 N.E.2d 1256 (2003) (rejecting interference with contractual relations claim where plaintiffs had been removed as sales representatives on a transaction between manufacturer and store, but received all the commissions they would have received had they continued in the position); Ratner v. Noble, 35 Mass.App.Ct. 137, 138, 617 N.E.2d 649 (1993) (plaintiff could not recover for defendant's mailing of letters intended to discredit her, because mailings had not caused her to suffer a job loss or other economic harm, as distinct from possible damage to her professional reputation. "[T]he essence of the tort is damage to a business relationship or contemplated contract of economic benefit").

3.    Reckless and/or Intentional Infliction of Emotional Distress (Count V)

Plaintiff fails to state a claim for intentional infliction of emotional distress, first, because such a claim is barred by the exclusivity provisions of the Workers' Compensation Act, G.L. c. 152, §24.[9]  See, e.g., Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 526 N.E.2d 246 (1988).

---

[9] There is no cognizable cause of action for "reckless" conduct against a public employee.  Jackson v. Town of Milton, 41 Mass.App.Ct. 908, 669 N.E.2d 225 (1996) (immunity afforded to public employees under Tort Claims Act, G.L. c.258, §2 applies to claims for reckless as well as negligent conduct).

"[A] suit for an intentional tort in the course of the employment relationship is barred by the exclusivity provision of the Workmen's Compensation Act, unless the employee has reserved a right of action pursuant to G.L. c. 152, §24." <u>Anzalone</u>, 403 Mass. at 124.[10] As plaintiff does not allege that she reserved her right to common-law actions under §24, "[t]he question, then, is whether [Racicot's] alleged actions occurred during the employment relationship; specifically, whether [Racicot's] conduct was within the scope of employment furthering the interests of the [Town]." <u>Id.</u>, at 125.

Racicot's actions, as alleged, clearly "occurred during the employment relationship," as the Massachusetts courts have defined that phrase. In <u>Anzalone</u>, the Court held that the complained-of conduct by plaintiff's supervisor – which included criticizing plaintiff, ordering him to perform dirty and menial jobs, taking steps to exacerbate his medical condition, and otherwise harassing him – was "related wholly to [defendant's] position as [plaintiff's] supervisor and to the manner in which [defendant] exercised his supervisory duties. The conduct complained of arose in the course of employment by the MBTA of [plaintiff and defendant]." <u>Id.</u>, 403 Mass. at 124. Similarly, in <u>Beling</u> v. <u>Radiation Monitoring Devices, Inc</u>., 1999 WL 959675 *6 (Super.Ct. Neel, J.), the Court held it "self-evident" that the defendant's termination of plaintiff, and his telling her that she had 'lost it,' was not for the defendant's own personal benefit, but was related to his position as plaintiff's supervisor, and furthered the employer's interest.

Here, plaintiff asserts that Racicot's motivation in pushing her to complete the recap sheet was that "he wanted to fix the problem" of financing for the ambulance service. <u>Statement</u>, ¶12. Thus, even if Racicot suspended plaintiff for refusing to sign the recap sheet, his conduct was admittedly not for his own personal benefit, but in furtherance of the Town's interest. As

---

[10]The exclusivity provision does not apply to certain torts, including defamation.

such, the conduct was "related wholly to [Racicot's] position" as Town Manager, and plaintiff's claim for intentional infliction of emotional distress is therefore barred by the exclusivity provision of the Workers' Compensation Act.

Plaintiff's emotional distress claim also fails because she cannot establish that Racicot's conduct was "extreme and outrageous."  See Sena v. Commonwealth, 417 Mass. 250, 263-264 (1994) (to state claim for intentional infliction of emotional distress, plaintiff must show, among other things, that defendant's conduct was extreme and outrageous).  To be considered "extreme and outrageous" Racicot's conduct must have been "beyond all bounds of decency and . . . utterly intolerable in a civilized community."  Id.  The conduct alleged here, which consists of unfairly suspending plaintiff and unfairly accusing her of lying, falls far below the exceptionally strict standard required to prove that conduct is "extreme and outrageous."  See Richey v. American Auto. Assn., Inc., 380 Mass. 835, 838-839, 406 N.E.2d 675 (1990) (even if employer committed "bad, unjust and unkind" act in firing plaintiff at time it knew he had been hospitalized for anxiety, circumstances did not approach plausible case of outrage or abuse of ordinary decencies).

> D.     Plaintiff Fails to Establish Her Negligence Claim Against the Town (Count VI)

Plaintiff has identified two bases for her claim of negligence: (1) the Town's alleged failure to follow its grievance policy; and (2) the Town's alleged failure to clearly set forth who supervised the assessors' clerk.  Statement, ¶34.

As a preliminary matter, plaintiff's negligence claim should be dismissed for lack of sufficient presentment, which is a condition precedent to bringing suit against a municipality under G.L. c. 258.  See G.L.c. 258, §4; Krasnow v. Allen, 29 Mass.App.Ct. 562, 566, 562 N.E.2d

1375 (1990).[11]  The presentment requirement includes both procedural prerequisites (i.e. timely submittal of the presentment letter to the appropriate public officer) and substantive ones, in that the letter must contain adequate notification of a claim, so that the responsible public official "can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future."  Wightman v. Methuen, 26 Mass.App.Ct. 279, 281, 526 N.E.2d 1079 (1988).  In Wightman, a plaintiff whose son was injured during a schoolyard incident brought a negligence claim against the town based on a failure to supervise the schoolyard, and a failure to seek immediate medical assistance.  However, since the plaintiff's presentment letter spoke only of failure to supervise the schoolyard, the Court dismissed the latter claim, holding that since "the notice cannot fairly be read as stating a claim of liability on account of the failure to seek immediate medical attention … the town was deprived of the opportunities for investigation, settlement, and preventive measures."  Id., 26 Mass.App.Ct. at 282.

In this case, plaintiff's presentment letter alleged that the Town was responsible for alleged civil rights and intentional tort violations by Racicot, due to its "negligent failure" to adequately train and supervise Racicot.  Statement, ¶35.  The letter did not allege any injury caused by failure to have a clear grievance policy, or failure to clearly identify who supervised the assessors' clerk; indeed, the letter did not even mention these alleged failures.  Thus, the letter is similar to that at issue in Wightman, supra: since it cannot fairly be read as stating a claim of liability based on the failures alleged in the Complaint, "the Town was deprived of the

---

[11] Specifically, G.L. c. 258, §4 provides in pertinent part:  "[a] civil action shall not be instituted against a public employer on a claim for damages under this chapter unless [a] claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose."

opportunities for investigation, settlement, and preventive measures," and therefore, plaintiff's negligence claim against the Town should be dismissed.

Plaintiff's negligence claim should also be dismissed on substantive grounds, as she cannot establish the necessary elements of negligence with respect to either of the Town's alleged failures.  With respect to the Town's failure to follow its grievance policy, plaintiff claims that the policy dictated that an employee raise the grievance with a department head first, then seek a hearing before the HRB if the issue was not resolved; but when plaintiff attempted to grieve her suspension before the Selectmen (as Racicot's department head), they insisted she take her grievance directly to the HRB.  Statement, ¶¶27-28.  However, as plaintiff admits, the HRB rescinded the suspension and awarded plaintiff full back pay, thereby fully accommodating her purpose in pursuing a grievance.  Statement, ¶31.  As such, plaintiff suffered no damages as a result of the Town's alleged failure to follow its grievance policy, and cannot maintain an action for negligence based on the same.  See Coughlin v. Titus & Bean Graphics, Inc., 54 Mass.App.Ct. 633, 638 (2002) (proof that damages resulted from breach of duty of care a necessary element of negligence claim); McCann v. Davis, Malm & D'Agostine, 423 Mass. 558, 560-561, 669 N.E.2d 1077 (1996) (rejecting negligence claim against law firm, where plaintiff would have suffered the claimed loss in the absence of law firm's negligence); Van Brode Group, Inc. v. Bowditch & Dewey, 36 Mass.App.Ct. 509, 517, 633 N.E.2d 424 (1994) ("[i]t is fundamental that a tort action cannot be sustained without proof of damages").

Plaintiff's claim based on the Town's failure to clearly identify who supervised the assessors' clerk fails for lack of proximate cause.  Following plaintiff's suspension, the Town established a formal policy whereby the assessors' clerk is supervised by both the Town Administrator and the Board of Assessors.  Statement, ¶33.  Had this policy been clearly set forth prior to the incidents underlying the Complaint, plaintiff still would have been suspended

because Racicot would have had authority over her.  Indeed, the fact that the policy formally

established a supervisory role for Racicot indicates that his previous understanding that he

supervised plaintiff was correct.  Therefore, lack of a clear policy regarding who supervised

plaintiff did not cause her alleged injuries, negating a claim for negligence based on same.

IV.    <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, the defendants respectfully request that

summary judgment enter in their favor, dismissing all claims set forth in the Complaint.

DEFENDANTS,

MICHAEL J. RACICOT
AND THE TOWN OF ORANGE

By their attorneys,

<u>/s/Joseph L. Tehan, Jr.</u>
Joseph L. Tehan, Jr. (BBO # 494020)
Jackie Cowin (BBO# 655880)
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA  02116
617-556-0007

233190/METG/0516