UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 03-30309-MAP

SHARI LITTLEWOOD,

    Plaintiff,

v.

MICHAEL J. RACICOT, Former Town Administrator for the TOWN OF ORANGE and THE TOWN OF ORANGE,

    Defendants

DEFENDANTS' L.R. 56.1 STATEMENT OF MATERIAL FACTS OF RECORD AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

1.  At the time of the incidents underlying the Complaint, plaintiff Shari Littlewood ("Littlewood") was an elected member of the Board of Assessors for the Town of Orange ("Town").  Complaint, ¶10.

2.  The Board of Assessors consisted of three members, including Littlewood and two males.  Excerpts from Deposition Testimony of Shari Littlewood ("Exhibit A"), p.32, l.22-p.33, l.1.

3.  Littlewood also served as Clerk of the Board of Assessors, an administrative position to which she was appointed by the Town's Board of Selectmen.  Exhibit A, p.29, l.12-15; p.39, l.3-7.

4.  Michael J. Racicot ("Racicot") was the Orange Town Administrator.  Complaint, ¶11.  When Racicot was hired as Town Administrator by the Selectmen in 1999, he was informed by the previous Town Administrator that he would supervise all Selectmen appointees, including Littlewood, in her role as assessors' clerk.  Excerpts from Deposition Testimony of Michael Racicot ("Exhibit B"), p.71, l.10-14; p.71, l.18-21; p.72, l.12-21; p.73, l.4-7.  Racicot performed Littlewood's

job evaluation, and she reported to him when she would be out of the office. <u>Exhibit A</u>, p.51, l.22-p.52, l..16.

5. As assessors' clerk, Littlewood was responsible for preparing the Town's "recapitulation sheet" (the "recap sheet"). <u>Exhibit A</u>, p.72, l.18-p.73, l.1. The recap sheet is a compilation of the Town's projected revenues and appropriations, which must be submitted to and certified by the state Department of Revenue ("DOR") each year before the Town may send out its tax bills. <u>Exhibit A</u>, p.74, l.1-5; p.135, l.8-12; <u>Exhibit B</u>, p.94, l.20-p.95, l.4. Once completed, the recap sheet must be signed by various Town officials, including at least two of the Town's assessors, before it is submitted to DOR. <u>Exhibit B</u>, p.129, l.19-22.

6. Littlewood did not have to obtain the assessors' signatures in order to satisfy her duties as clerk with respect to preparing the recap sheet. <u>Exhibit B</u>, p.100, l.3-10

7. Littlewood claims that, as she was preparing the recap sheet in the fall of 2000, she calculated that the property tax rate had increased, due to the Town's decision to establish a "reserve account" for its ambulance service. <u>Exhibit A</u>, p.71, l.7-13; p.77, l.20-p.78, l.12.

8. The reserve account, which is authorized by G.L. c.40, §5F, had recently been approved by the Board of Selectmen. <u>Exhibit A</u>, p.70, l.22-p.71, l.2. The reserve account was expected to make the ambulance service self-sufficient – as fees collected from ambulance users would be deposited into the account and then used to pay operating costs – rather than funded by the Town's tax receipts. <u>Exhibit A</u>, p.65, l.4-21; <u>Exhibit B</u>, p.49, l.3-8; p.49, l.18-23.

9. Creation of the reserve account required a one-time infusion of funds from the Town's General Fund. <u>Exhibit A</u>, p.67, l.16-l.22; p.69, l.3-11. Littlewood asserts

        that these start-up costs resulted in a tax increase which required, but did not have, the approval of Town Meeting.  <u>Exhibit A</u>, p.69, l.3-23.

10. Littlewood raised this issue with the other members of the Board of Assessors, and the assessors, through Chairman Stephen Adams, raised the issue at a Selectmen's meeting.  <u>Exhibit A</u>, p.78, l.22-p.79, l.1; p.79, l.19-p.80, l.11.  Littlewood herself did not speak at the Selectmen's meeting.  <u>Id</u>., p.80, l.10-16.

11. Racicot disputes Littlewood's assertion that a Town Meeting vote was required to address the potential tax increase cited by the assessors**.**

12. Plaintiff also asserts that the ambulance service was operating at a deficit, and that Racicot was a proponent of the reserve account because he "wanted to fix the problem."  <u>Exhibit A</u>, p.105, l.15-p.106, l.3.

13. Between Monday, October 9, 2000, and Thursday, October 12, 2000, Racicot asked Littlewood for the completed recap sheet several times.  <u>Exhibit B</u>, p.87, l.18-p.88, l.2; p.92, l.15-17.

14. At first, Littlewood told Racicot that the recap sheet had been completed except for the assessors' signatures, which she would obtain at their next meeting.  <u>Exhibit A</u>, p.92, l.19-p.93, l.8; <u>Exhibit B</u>, p.88, l.19-p.89, l.1.  At this point, Littlewood had prepared the recap sheet without the ambulance reserve account item, but she did not so inform Racicot, or raise any issue about the reserve account with him.  <u>Exhibit A</u>, p.84, l.7-23; p.93, l.9-12.  Racicot testified that he asked for the forms the next morning and Littlewood again told him they would be completed.  <u>Exhibit B</u>, p.90, l.19-p.91, l.1.

15. Subsequently, Selectman Arthur Reppas told Littlewood and Racicot that he wanted to review the issue of the reserve account before the recap sheet was

3

submitted to DOR. <u>Exhibit A</u>, p.96, l.19-p.97, l.11; <u>Exhibit B</u>, p.82, l.5-19. The other two Selectmen, however, informed Racicot that they did not intend to rescind their vote to establish the reserve account. <u>Exhibit B</u>, p.91, l.4-23.

16. Racicot again asked Littlewood for the recap sheet, and when she did not produce it, ordered her to have it to him by the end of the day on Thursday, October 12. <u>Exhibit A</u>, p.99, l.2-6; <u>Exhibit B</u>, p.95, l.17-20.

17. Littlewood did not submit the paperwork to Racicot by the end of the day; nor did she offer an explanation why. <u>Exhibit A</u>, p.101, l.12-16; p.106, l.9-11; <u>Exhibit B</u>, p.95, l.23-p.96, l.8.

18. On Friday, October 13, Racicot called Littlewood to his office and asked for the recap sheet. Littlewood did not respond, but instead turned around and went back to her office. <u>Exhibit A</u>, p.106, l.12-13; p.107, l.8-13.

19. Later that morning, Racicot went to Littlewood's office and again asked for the recap sheet; at this point Littlewood indicated the sheet was in her inbox, and Racicot took it. <u>Exhibit A</u>, p.108, l.4-7; <u>Exhibit B</u>, p.96, l.9-17. Littlewood admits that, when she submitted the recap sheet to Racicot, the sheet did not include a line item for the ambulance reserve account, though she did not so inform him. <u>Exhibit A</u>, p.108, l.11-13; p.120, l.20-22. Littlewood also admits that one of the items on the recap sheet had to be changed due to an error, though she asserts that the error was made by the Town Accountant. <u>Exhibit A</u>, p.160, l.9-13.

20. Racicot asserts that the recap sheet submitted by Littlewood was missing several pages, and several required signatures. <u>Exhibit B</u>, p.58, l.5-19.

4

21. On the afternoon of Friday, October 13, Racicot and Littlewood participated in a "financial team" meeting with several other Town officials. <u>Exhibit A</u>, p.110, l.11-13; p.110, l.19-21. During the meeting, a dispute arose between Racicot and Littlewood, the details of which are disputed. It is undisputed that Racicot directed Littlewood to meet with him privately after the team meeting. <u>Exhibit A</u>, p.114, l.17-20; <u>Exhibit B</u>, p.108, l.1-2.

22. Racicot met with Littlewood privately and began to discuss the recap sheet, at which point Littlewood told Racicot that she "didn't want to discuss this with him anymore." <u>Exhibit A</u>, p.119, l.1-4; p.119, l.20-21. The remainder of the discussion at this meeting is in dispute. It is undisputed that at this meeting, Racicot issued Littlewood a notice that she was being suspended for three days for "insubordination" and "failure to perform duties." <u>Exhibit A</u>, p.118, l.5-7; p.118, l.15-17; <u>Exhibit B</u>, p.110, l.15-p.111, l.3; <u>Memorandum from Michael J. Racicot to Shari Littlewood</u> ("Exhibit C").

23. Racicot asserts that he suspended Littlewood because she (1) failed in her duties as a clerk to complete the recap sheet; (2) told him that the sheet was completed when it was not; and (3) yelled at him during the financial team meeting. <u>Exhibit B</u>, p.40, l.15-18; p.110, l.8-12.

24. Littlewood asserts that the reasons cited by Racicot for the suspension are a pretext, and that he suspended her because she refused to sign the recap sheet, as an assessor, due to her concern over the ambulance reserve account. <u>Exhibit A</u>, p.120, l.7-9.

25. Racicot never addressed the issue of the recap sheet with the other two members of the Board of Assessors. <u>Exhibit A</u>, p.183, l.4-7.

5

26. Racicot testified that he pushed the issue of completion of the recap sheet with Littlewood, and not with the other assessors, because "she was the clerk." <u>Exhibit B</u>, p.124, l.3-10.

27. Plaintiff grieved her suspension. She asserts that the Town's policy with respect to grieving disciplinary issues was for an employee to bring the grievance to a department head, and then, if the issue was not resolved, to the Town's Human Resources Board, which was charged with resolving personnel issues. <u>Exhibit A</u>, p.44, l.6-9; p.193, l.13-18.

28. Plaintiff sought to grieve her suspension before the Selectmen, but was told to go directly to the HRB, which she did. <u>Exhibit A</u>, p.131, l.1-21.

29. The HRB planned to hold a hearing on Littlewood's grievance in Executive Session, but Littlewood requested that the hearing be open to the public. <u>Exhibit A</u>, p.136, l.21-p.137, l.5.

30. At the HRB hearing, Racicot stated that he suspended Littlewood because she lied to him about the status of the recap sheet, and because she screamed and yelled at him in front of other Town officials. <u>Exhibit A</u>, p.142, l.10-15.

31. The HRB decided to rescind plaintiff's suspension and award her full back pay. <u>Exhibit A</u>, p.152, l.3-8.

32. Plaintiff suffered no economic loss as a result of the incidents underlying the Complaint. <u>Exhibit A</u>, p.152, l.9-12.

33. Also at the HRB hearing, a decision was made to establish a plan regarding supervision of the assessors' clerk. Subsequently, a plan was set forth confirming that the Town Administrator and the Board of Assessors would jointly supervise

6

the assessors' clerk.  <u>Exhibit B</u>, p.119, l.7-21; <u>Memorandum dated January 29, 2001</u> ("Exhibit D").

34. Plaintiff claims that the Town was negligent in its alleged failure to follow its grievance policy; and its alleged failure to clearly set forth who supervised the assessors' clerk.  <u>Complaint</u>, ¶65; <u>Exhibit A</u>, p.192, l.12-l.17; p.193, l.10-12; p.195, l.21-p.196, l.5.

35. Plaintiff's presentment letter, which she submitted to the Town pursuant to G.L. c.258, §4, alleged that the Town was responsible for alleged civil rights and intentional tort violations by Racicot, due to its "negligent failure" to adequately train and supervise Racicot.  The letter did not allege any injury caused by failure to have a clear grievance policy, or failure to clearly identify who supervised the assessors' clerk; indeed, the letter did not even mention these alleged failures.  <u>Letter from Caroline Carrithers to Michael J. Racicot, et al.</u> ("Exhibit E"), p.4, ¶¶4-5.

        DEFENDANTS,

        MICHAEL J. RACICOT
        AND THE TOWN OF ORANGE

        By their attorneys,

        <u>/s/Joseph L. Tehan, Jr.</u>
        Joseph L. Tehan, Jr. (BBO # 494020)
        Jackie Cowin (BBO# 655880)
        Kopelman and Paige, P.C.
        31 St. James Avenue
        Boston, MA  02116
        617-556-0007

242207/METG/0516