UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WESTERN SECTION
CIVIL ACTION
No. : 03-30309-MAP

_____
                                    )
SHARI LITTLEWOOD,                   )
                    Plaintiff       )
                                    )
v.                                  )
                                    )
MICHAEL J. RACICOT, former          )
Town Administrator for the Town     )
of Orange, and                      )
                                    )
THE TOWN OF ORANGE,                 )
                    Defendants      )
_____    )

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

**FACTS**

The plaintiffs incorporate by reference their L.R. 56(1) Statement of Material and Disputed
Facts.

**STANDARD OF REVIEW**

A court may only grant summary judgment pursuant to FED. R. CIV. P. 56(c) if "there is

no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a

matter of law." Once the moving party has asserted that no genuine issue of material fact exists,

the burden is on the opposing party to provide specific facts demonstrating that there is, indeed, a

trialworthy issue. *National Amusements, Inc. v. Town of Dedham* , 43 F.3d 731, 735 (1st Cir.

1995). A dispute is genuine if it "may reasonably be resolved in favor of either party." *Cadle

Co. v. Hayes* , 116 F. 3d 957, 960 (1st Cir. 1997). See also *McCarthy v. Northwest Airlines, Inc.,*

56 F.3d 313, 315 (1st Cir. 1995)(A "genuine" issue is one "that a reasonable jury could resolve in favor of the nonmoving party.)"  A fact is material if it "has the capacity to sway the outcome of the litigation under the applicable law." *Cadle Co* ., 116 F.3d at 960.

In determining summary judgment under Rule 56, the court must review the record "taken as a whole." *Reeves v. Sanderson Publishing Products, Inc.* , 530 U.S. 133, 150 (2000)(quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.* , 475 U.S. 574, 587 (1986)).[1]  In so doing, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*.

The court must disregard all evidence favorable to the moving party that the jury is not required to believe.  See *Ahern v. O'Donnell* , 109 F.3d 809, 811 (1st Cir. 1997)(at summary judgment "all reasonable competing inferences" must be drawn in favor of the non-moving party)); *Gedeon v. Daniel O'Connell's Sons, Inc* ., 2001 U.S. Dist. LEXIS 22435, 26 (D. Mass. 2001)("Such dueling inferences, of course favor Plaintiff at summary judgment.").  That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves* , 530 U.S. at 151.

---

[1] Although in *Reeves* , the issue before the Court is a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, the Court stated that "[t]he standard for summary judgment 'mirrors' the standard for judgment as a manner of law, such that 'the inquiry under each is the same.'" *Reeves* , 503 U.S. at 151 (quoting *Anderson v. Liberty  Lobby, Inc* ., 477 U.S. 242, 250-251 (1986).

**ARGUMENT**

**I.    DEFENDANT RACICOT VIOLATED PLAINTIFF LITTLEWOOD'S FIRST AMENDMENT RIGHTS TO FREE SPEECH AND EXPRESSION.**

In Count I of the Complaint, plaintiff Littlewood accuses defendant Racicot of violating her First Amendment rights to free speech when he suspended her for speaking out against his plan to set up a separate account for the Orange Ambulance Service and for defying him when he attempted to proceed with his plan in disregard of plaintiff Littlewood's and the other Assessors' opposition. To establish that defendant Racicot violated her First Amendment rights to free speech and expression, plaintiff Littlewood must show that her speech and actions constitute a "statement" of inherent public concern and that her speech and actions were the substantial and motivating factors underlying defendant Racicot's decision to harass and suspend her. *Rankin v. McPherson,* 483 U.S. 378, 383 (1987*). O'Connor v. Steeves,* 994 F.2d 905, 915 (1st Cir. 1993); *Tang v. Rhode Island* , 163 F. 3d 7, 11 (1st Cir. 1998); *Connick v. Myers,* 461 U.S. 138, 148 (1983).[2] The facts of this case clearly show that plaintiff Littlewood's speech and actions constitute a "statement" of inherent public concern and that it was her speech and her actions which motivated defendant Racicot to suspend her. Therefore, she respectively requests the court to deny the defendant's motion for summary judgment.

---

[2]  The defendants list a third criterion, i.e., "her and the public's First Amendment interests outweighed the employer's interest in the efficient performance of the workplace." Memorandum in Support of Defendants' Motion for Summary Judgment, at 5.C. However, because the defendants do not argue that the court should evaluate whether the Town of Orange's need for an efficient workplace outweighs the public's interest in a rise in the tax rate, the plaintiff does not offer a counter argument in the body of her Opposition.  Assuming *arguendo* that the defendants had offered such an argument, the plaintiff makes the following counter-argument.  First of all, increasing the tax rate implies a fundamental right to procedural due process.  The citizens of Orange had the right to be involved in a discussion of and to vote on an increase in their property taxes.  No workplace need for efficiency can outweigh that right.  Secondly, there is no evidence that plaintiff Littlewood's speech or actions impeded the completion of the tax forms. Even after the delay in sending out the tax forms supposedly caused by plaintiff Littlewood's refusal to sign them, the tax forms were submitted to the state at the same time, if not earlier than they had been the previously year.

## A.    PLAINTIFF LITTLEWOOD'S SPEECH AND ACTIONS CLEARLY CONSTITUTE A "STATEMENT" OF INHERENT PUBLIC CONCERN.

The defendants argue that plaintiff Littlewood's conduct conveyed no particularized "message."  And, even if it did, it was so vague that no one could understand it.  Memorandum Supporting the Defendants' Motion for Summary Judgment at 5.C.1.   These arguments lack merit.  First of all, plaintiff Littlewood, on at least three occasions, verbally advised the defendant and other members of the community that she opposed his plan to establish a reserve fund for the ambulance service because it required an increase in the tax rate without a town vote.  Exhibit 2, Racicot Dep. at 32, ll. 4-8; Exhibit 2, Racicot Dep.  at 85, ll 6-9. The issue she raised, a tax increase without a town vote, is a matter of inherent public concern protected by the First Amendment.  Within the context of her statements, no one could misinterpret her expressive conduct.  Indeed, statements made by defendant Racicot confirm that he "got" the particularized message that she conveyed by her expressive conduct.  For these reasons, the defendants' arguments fail and the plaintiff urges the court to deny their motion for summary judgment.

### 1.    Raising Property Taxes Without a Town Vote Is of a Matter of Inherent Public Concern.

The right of a public employee to engage in speech on matters of public concern without fear of retaliation by his employer is clearly established.  *Rankin v. McPherson,*  483 U.S. 378, 383 (1987).  An issue of public concern is one "relating to [a] matter of political, social, or other concern to the community." *Connick,*  461 U.S. at 46.  The First Circuit has limited matters of "public concern" to information needed to enable citizens to make informed decisions about the operation of their government, needed to disclose misconduct or needed to generate public debate on some issue of significant public interest.  *O'Connor,*  994 F. 2d at 913.

Courts have repeatedly found that speech dealing with the government's lack of compliance with regulations is a matter of public concern. See e.g., *Padilla -Garcia v. Guillermo,* 212 F. 3d 69, 72 (1st Cir. 2000)(Speech alleging violations of a statute forbidding the use of a government vehicle for personal use is of public concern); *Moran v. Washington,* 147 F. 3d 839, 849 (9th Cir. 1998)(voicing criticism of consumer outreach plan because it violated regulations is protected); *Chappel v. Montgomery County Fire Protection,* 131 F. 3d 564, 576 (6th Cir. 1997)(Violations of state safety codes and regulations by ambulance director is of public concern*); Propst v. Bitzer* , 39 F. 3d 148, 152 (7th Cir. 1994)(alleging misuse of university funds); *O'Connor* , 994 F. 2d at 915 (alleging violations of state tax code by elected official); *Conaway v. Smith,* 853 F. 2d 789, 796 (10th Cir. 1988)(Complaints about violations of the building code are issues of public concern); *Patrick v. Miller,* 953 F. 2d 1240, 1247-48 (10th Cir. 1992)("Perceived illegalities in City's budgeting activities constituted topic of inherent public concern"); *Breuer v. Hart* , 909 F. 2d 1035, 1038 (7th Cir. 1990) ("County Sheriff's alleged conversion of County property was 'plainly of public concern in its substance'"); *Parks v. City of Brewer* , 56 F. Supp. 2d 89 (D. Me. 1999)(Speech revealing that city councilor neglected to require a site visit in violation of zoning ordinance is of public concern.).

Plaintiff Littlewood, as a member of the Board of Assessors (Exhibit 1, Littlewood Dep. at 11-12, ll 11-3), spoke out at a meeting of the selectmen,[3] advising them that defendant Racicot's plan to create a reserve fund for the ambulance service did not involve a simple accounting change as he had claimed, but, instead, would force the town to raise its tax rate.  See Exhibit 3, *The Recorder* on October 5, 2000Exhibit.   Her information, which caused enough of a

---

[3] Neither plaintiff Littlewood (Exhibit 1, Littlewood Dep. at 80, ll 12-16) nor defendant Racicot (Exhibit 2, Exhibit 2, Racicot Dep. at 89, ll 9-11) could recall if plaintiff Littlewood spoke at the select board meeting on October 4, 2000.  However, both a contemporary newspaper article in *The Recorder* on October 5, 2000 (Exhibit 3), and the minutes from the meeting (Exhibit 4) quote her as advising the Selectmen that their decision on September 20, 2000, would raise the tax rate seventy-two cents for every one thousand dollars a home is valued.

stir to be reported in the newspaper and her subsequent speech and expressive conduct opposing

defendant Racicot's plan because it raised taxes without a town vote involved matters of inherent

public concern as defined by the First Circuit.  It provided information needed to enable citizens

to make informed decisions about the operation of their government; it disclosed a potential,

although inadvertent misconduct (i.e., that the selectmen had unknowingly raised the tax rate

without a town vote)(Exhibit 2, Racicot Dep.  at 85, ll. 6-9); and they generated debate on an

issue of significant public interest.  Exhibit 1, Littlewood Dep. at 81, 3-15.  Therefore, plaintiff

Littlewood's speech and expressive conduct, as it related to the increase in the tax rate and her

opposition to it, were matters of public concern, protected by the First Amendment.

> **2.**     **Plaintiff Littlewood's Speech and Expressive Actions Are Clear "Statements" of Her Opposition To Defendant Racicot's Plan To Create a Reserve Fund for the Ambulance Service, and Thus, Are Protected Matters Of Public Concern.**

The defendants argue that plaintiff Littlewood's conduct, especially her refusal to sign the

recap sheets and her stalling in conveying the recap sheets to defendant Racicot, while expressive, is

not entitled to First Amendment protection because it did not convey any "particularized message."

Memorandum Supporting Defendants' Motion for Summary Judgment at 5.C.1.  This argument

lacks merit because it ignores several relevant facts.  As reported above, plaintiff Littlewood spoke

out at the October 4, 2000 meeting of the selectmen, advising them of the Board of Assessors'

concerns about the increase in the tax rate necessitated by defendant Racicot's plan to create an

reserve fund for the ambulance service.  On October 12, 2000, plaintiff Littlewood explicitly told

defendant Racicot that she and the other members of the Board of Assessors were not going to sign

the recap sheets including the tax increase.  During this conversation, "she [plaintiff Littlewood]

explained [to defendant Racicot] her position as an assessor, as an elected member of the Board of

Assessors, that she did not feel that they should sign the recapitulation sheet because they did not

agree with the accounting change because their, (sic) at the time they believed it was going to raise the tax rate a significant amount."  Exhibit 2, Racicot Dep.  at 35-36, ll 19-1.   She then iterated that that "they [the Board of Assessors] would not sign the sheets."  Exhibit 2, Racicot Dep.  at 36, ll. 10-11.  On October 13, 2000, the day that she was suspended, plaintiff Littlewood again told defendant Racicot that she would not sign the recap sheets.  Exhibit 1, Littlewood Dep. at 120, ll 3-6.  Exhibit 2, Racicot Dep.  at 40, ll. 11-16.

From these speeches, defendant Racicot understood perfectly what particular message plaintiff Littlewood was conveying.  Given this knowledge, the protected message of inherent public concern that plaintiff Littlewood intended to convey by her expressive conduct is clear.  Thus, her delay in turning the recap sheets over to defendant Racicot, her steadfast refusal to sign the sheets, and her omission of the appropriation for the ambulance reserve fund from the recap sheets she submitted to defendant Racicot are all clear manifestations of her protected message that she opposed defendant Racicot's plant to create a reserve fund for the ambulance service because it would raise the tax rate without a town vote.

### 3. Defendant Racicot's Actions and Words Clearly Show That He Understood the "Message" that Plaintiff Littlewood Was Conveying by Her Actions and Words.

Defendant Racicot's own statements refute the defendants' claim that "an individual observing Littlewood's conduct could not have reasonable understood any message that she might have allegedly been trying to convey."  Memorandum in Support of Defendants' Motion for Summary Judgment, at 8.C.1.  When asked if he knew why plaintiff Littlewood did not complete the recap sheets as requested, defendant Racicot replied that "I'm assuming that she was taking her position as clerk and using it to prevent something that she didn't want to see happen in her elected position."  Exhibit 2, Racicot Dep.  at 59, ll. 11-14.  Asked to explain what he meant, defendant

Racicot replied that "she [plaintiff Littlewood] had expressed, when she came to see me before the discipline, that she didn't agree with the accounting change. So I had to assume that in her dual role she was, by not completing the paperwork, there's obviously no way that it can be, that anyone is going to be able to sign." Racicot Depot. at 59, ll.17-21.

In a statement defendant Racicot claims to have made during the Financial Committee meeting held on the day that he suspended plaintiff Littlewood, he again demonstrates that he interpreted her conduct as expressive of her opposition to his plan to create a reserve fund for the ambulance services thereby increasing the tax rate. He claims to have said that "we've got problems there. Our tax recap hasn't been submitted, and Shari, as a representative of the assessors' office, can maybe explain what's going on with that." Exhibit 2, Racicot Dep. at 106, ll. 17-20. That is, by identifying plaintiff Littlewood as a "representative of the assessor's office" rather than the assessors' clerk, defendant Racicot acknowledged that the so-called problems that he alluded to (e.g., refusing to sign the recap forms) resulted from plaintiff Littlewood's role as an assessor, not in her role as an assessor's clerk. Thus, he is acknowledging that any delay in submitting the recap sheets resulted from her principled opposition to increasing the tax rate without a town vote, rather than any defects in her performance in her role as an assessor's clerk.

These words confirm that defendant Racicot understood perfectly the particular "message" conveyed by plaintiff Littlewood's conduct, including her reluctance to submit the recap sheets to him. Moreover, these words confirm that defendant Racicot knew or should have known that the "message" convey to him by plaintiff Littlewood's speech and expressive conduct was of inherent public concern, therefore protected by the First Amendment. For these reasons, the plaintiff respectfully requests the court to deny the defendants' motion for summary judgment.

**B.      ANGER AT PLAINTIFF LITTLEWOOD'S PROTECTED OPPOSITION TO HIS PLAN TO INCREASE THE TAX RATE MOTIVATED DEFENDAN RACICOT.**

Defendant Racicot alleges that he suspended plaintiff Littlewood for insubordination and failure to perform her duties as a clerk, for her failure to complete the recap sheet, for her lies to him that it was complete when it was not, and for yelling at him in a meeting,  Memorandum in Support of Defendants' Motion for Summary Judgment at 9,C. 2.  Plaintiff Littlewood dismisses defendant Racicot's alleged reasons, asserting that the real reason he harassed her and then suspended her was to retaliate for her spoken and expressive opposition to his plan to create a reserve fund for the ambulance service.  She categorically denies that she was insubordinate to the defendant  (Exhibit 1, Littlewood Dep. at 116, ll. 15-23; Exhibit 1, Littlewood Dep. at 161, ll. 12-14.) that she failed to perform her duties as the Assessor's clerk or failed to complete the recap sheets (Exhibit 1, Littlewood Dep. at 108-109, ll 21-1; 119, ll 13-16), or that she lied to him that they were completed when they were not  (Exhibit 1, Littlewood Dep. at 159, ll. 7-16).[4]

One way to demonstrated the pretext of a defendant's articulated explanation for a negative employment decision is to attack the employer's reason for his decision directly by identifying "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' such that a factfinder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'" *Santiag o-Ramos v. Centennial P.R. Wireless Corp.,*  217 F.3d 46, 54 (1st Cir. 2000)(quoting *Hodgens* , 144 F.3d at 168 (1st Cir. 1998)).  Thus, evidence that defendant Racicot misrepresented his real motivation for demanding that plaintiff Littlewood immediately process the recap sheets, and his rush to punish her without

---

[4] Plaintiff Littlewood will admit that she might have raised her voice at the financial committee meeting, but only because defendant Racicot was yelling at her.  Exhibit 1, Littlewood Dep. at 114, ll 7-8.

considering any alternative or mitigating factors confirm that defendant Racicot's proffered reason for harassing and suspending plaintiff Littlewood was pretextual.

> **1.    Defendant Racicot Misrepresented his Reason for Demanding that Plaintiff Littlewood Immediately Process the Recap Sheets.**

Defendant Racicot claims that the reason that he was so concerned about plaintiff Littlewood processing the recap sheets as soon as possible after the October 4, 2000, meeting of the selectmen was that he was concerned about getting the tax bills out sometime in November. As he stated, "you have to get the tax recap sheet in because it takes the state a little while to certify it . . . . The longer we delay, it the more chance there is that we won't have enough money in the bank to cover the bills that are still coming in every week." Exhibit 2, Racicot Dep. at 94. ll. 8-29. In the suspension notice he gave to plaintiff Littlewood, defendant Racicot stated that her "actions had a direct, negative effect on the timeliness of the Town of Orange." Exhibit 2, Racicot Dep. at 112, ll. 11-13. When asked what he meant by this statement, defendant Racicot replied that "I meant the longer those forms weren't complete the longer it was going to take us to get our tax rate certified." Exhibit 2, Racicot Dep. at 112, ll. 16-18. In other words, defendant Racicot claims that he harassed plaintiff Littlewood and suspended her because she delayed the certification of the tax rate, which, in turn, would have delayed collecting the taxes.

This explanation is patiently false. Defendant Racicot's rush to get the tax rate certified was not necessary to maintain the town's cash flow. As he admitted, his goal was to get the tax bills out in November. Exhibit 2, Racicot Dep. at 38, ll. 20-23. However, even with the delay caused by plaintiff Littlewood's suspension (from October 16 until October 18, 2000) the recap sheets were submitted earlier in 2000, than they had been in 1999. Exhibit 2, Racicot Dep. at 87, ll. 1-17. In neither year did the Town of Orange have to borrow money to cover a short fall in the cash flow.[5]

_____

[5] As plaintiff Littlewood pointed out, even if there would have been a problem with the tax rate certification, the

Exhibit 1, Littlewood Dep. at 199, ll. 2-3.  Moreover, for defendant Racicot to involve himself to

such an extent in the process of preparing the tax recap sheets was highly unusual.  Exhibit 1,

Littlewood Dep. at 100, 8-15.  The responsibility for processing the tax recap sheets is vested in the

Board of Assessors.  Exhibit 1, Littlewood Dep. at 90, ll 11-15.  The Town Administrator plays no

role in this process.  Exhibit 1, Littlewood Dep. at 94, ll. 11-13.  For defendant Racicot to insert

himself into the process to the extent that he did suggests that his motivation was not simply to

facilitate the process.  A more plausible explanation of his conduct is that he used the pretext that he

needed the recap sheets submitted to the state immediately to harass and suspend plaintiff Littlewood

in retaliation for her principled opposition to his plan to create a reserve fund for the ambulance

service.

> **2.**      **Defendant Racicot's Rush to Punish Plaintiff Littlewood Supports
>              Her Claim That His Motive for Harassing Her and then Suspending
>              Her Was Pretextual**.

Plaintiff Littlewood was, or should have been, a valued employee.  She is a professional with

a B.A. in Business Sciences from the University of Massachusetts.  Exhibit 1, Littlewood Dep. at 4-

5, ll. 23-6.  Her performance rating submitted by defendant Racicot, was above average.  Exhibit 1,

Littlewood Dep. at 52, ll. 1-3; Exhibit 2, Racicot Dep.  at 75, ll. 2-4.  He stated that until October

2000, he had always gotten along well with her.  Exhibit 2, Racicot Dep.  at 75, ll. 16-17.  He further

stated that prior to  the one week in October she had always completed her work promptly.  Exhibit

2, Racicot Dep.  at 87, ll. 10-14.  However, in spite of the previous good relationship defendant

Racicot had with plaintiff Littlewood, and in spite of her above average performance, as soon as she

criticized his plan for the ambulance service during the classification meeting on October 4, 2000, he

ceased treating her as the profession she is. Instead of allowing her to assume responsibility for

preparing the recap sheets in a timely manner as he had done the previous year (Exhibit 2, Racicot

---

town could have sent out preliminary tax bills which would have alleviated any cash flow problems. xx

Dep. at 87, ll. 1-17), he took over her project. Exhibit 1, Littlewood Dep. at 100, ll. 8-15. Only three working days after the classification meeting, he began questioning her veracity and checking on her progress completing the recap sheets. Exhibit 2, Racicot Dep. at 41, ll. 20-7. He continued to harass her about her progress for the next three days. Exhibit 2, Racicot Dep. at 42, ll 7-20. On the fourth day, he threatened her, shouting that four people, etc. and then demanded that she have the recap sheets on his desk by the end of the day. Exhibit 2, Racicot Dep. at 42, l 20. On the fifth day he suspended her. Exhibit 1, Littlewood Dep. at 181. ll. 8-9.

Defendant Racicot's harassment of plaintiff Littlewood, his anger at her, and his suspension are inconsistence with his professed motive that he wanted to ensure a smooth cash his unprofessional treatment of plaintiff Littlewood three business days after she raised concerns about his plan to create a reserve fund for the ambulance service confirms that his true motive was to retaliate against her for opposing his plan. In so doing he violated her First Amendment rights to free speech and expression. For these reasons, the plaintiff respectfully respects that the court reject the defendants' motion for summary judgment.

## II.     PLAINTIFF LITTLEWOOD HAS STATED A CLAIM PURSUANT TO THE MASSACHUSETTS CIVIL RIGHTS ACT (MCRA).

To establish a prima facie case under the MCRA, a plaintiff must demonstrate *each* of the following three elements: "(1) the plaintiff possesses a right secured by the Constitution or laws of either the United States or the Commonwealth, (2) the plaintiff's right has been interfered with, or attempted to be interfered with, and (3) the interference or attempted interference was by 'threats, intimidation or coercion.'" In this regard, the defendants assert that the plaintiff has failed to allege the third element of "threats, intimidation or coercion." Memorandum Supporting the Defendants' Motion for Summary Judgment at 11.E. This assertion is simply not true.

12

Massachusetts have consistently held that an employer's retaliatory action against an employee for engaging in protected speech and expression is threatening, iuntimidating, and coercive pursuant to the MCRA.  See, e.g., *Broderick v. Roache*, 803 F.Supp. 480 (D.Mass. 1992) (holding that although actual or potential physical duress is easily identified and, accordingly, may serve as a proxy for threats, intimidation, or coercion, a scheme of harassment arising from the exercise of secured rights also violates the MCRA).  Rather, cancellation of a contract securing future economic gain, when tied to the exercise of a constitutional right, can constitute coercion.  See, e.g., *Redgrave v. Boston Symphony Orchestra, Inc.,* 399 Mass. 93, 502 N.E.2d 1375 (1987) (finding a cause of action under the MCRA where defendant canceled a commercial contract with plaintiff due to plaintiff's speech).

In *Karentnikova v. The Trustees of Emerson College and Dr. Allen E. Koenig,* 725 F. Supp. 73 (1989), the United States District Court for the District of Massachusetts, upheld Count IV of the plaintiff's complaint, where she alleged that the defendants violated her rights under the MCRA by denying her tenure on the basis of her political expression and thereby attempting by "threats, intimidation or coercion" to interfere with her constitutional right to free speech. The Court held that the issues raised by the defendants in their motion to dismiss for failure to state a claim under MCRA, (that *Karentnikova* had not sufficiently alleged "threats, intimidation or coercion) were addressed by the Supreme Judicial Court in *Bally v. Northeastern University*, 403 Mass. 713, 532 N.E.2d 49 (1989). In that case, the Supreme Judicial Court stated that the cancellation of a contract, if it has the "effect, intended or otherwise, desired or not, of coercing [the plaintiff] not to exercise her First Amendment rights, violates the MCRA." *Id.*.

Massachusetts courts and the U.S. District Courts in Massachusetts have recognized causes of action where the offensive conduct consisted of retaliation for a single instance of

protected speaking.  See, e,g,, *Cignetti v. Healy,* 967 F.Supp. 10 (D. Mass. 1997) (holding that a firefighter's allegations that city officials retaliated against him for making public statements regarding the city's waste policies sufficed to support claims under the First Amendment and the MCRA); *Storlazzi v. Bakey* , 894 F.Supp. 494 (D. Mass.), aff'd, 68 F.3d  455 (1ˢᵗ Cir. 1995) (holding that, where plaintiff establishes a causal link between protected speech and retaliatory action, a cause of action exists under the MCRA); *Orkiolla v. Action for Boston Community Dev*., 1993 WL 818617 (Mass. Super. Ct., Nov. 12, 1993) (finding a violation of the MCRA where an employer fired the plaintiff for publicly criticizing his employer and his supervisor).

Federal precedents, and other Massachusetts appellate decisions recognize that the natural meanings of the terms "threats, intimidation or coercion" include economic and moral, as well as physical force.  As such, an employer's decision to threaten, intimidate or discharge an employee because he engaged in protected free speech would also satisfy the intimidation and coercion requirements of the statute. See, Heins, *Massachusetts Civil  Rights Law,* 76 Massachusetts Law Review 77, 83, 84 (1991).  Plaintiff Littlewood engaged in protected speech when she opposed defendant Racicot's plan to appropriate money from the general fund to set up an ambulance reserve fund.  Her speech and her actions were all a function of her opposition to defendant Racicot's plan, thus, protected.  In retaliation, he embarked on a campaign of harassment, including repeatedly demanding that plaintiff Littlewood aid him in ramming through a tax increase in spite of her opposition, (Exhibit 2, Racicot Dep.  at 41-42, ll. 20-20), in yelling at her (Exhibit 2, Racicot Dep. at 102, ll. 12-13), in holding her up to ridicule in front of her peer  (Exhibit 1, Littlewood Dep. at 117, ll. 9-22), and finally in suspending her.  Exhibit 1, Littlewood Dep. at 181. ll. 8-9.  As in the numerous cases cited above, defendant Racicot's retaliation against plaintiff Littlewood because she engaged in protected speech and expression, constitutes the necessary "threats, intimidation, or

coercion" pursuant to the MCRA.   Therefore, the plaintiff respectfully requests that the court deny the defendants' motion for summary judgment.

## III.    DEFENDANT RACICOT TREATED PLAINTIFF LITTLEWOOD DIFFERENTLY THAN SIMILAR SITUATED MALE MEMBERS OF THE BOARD OF ASSESSORS.

The Fourteenth Amendment to the United States Constitution promises all individuals equal protection under the law.  M.G.L. Chapter 151B promises all individuals equal treatment regardless of gender.  Courts have interpreted equal protection under the law and equal treatment to mean that "similarly situated entities must be accorded similar governmental treatment." *Barrington Cove, LP v. R.I. Hous. & Mortgage Fin. Cor    p.,* 246 F. 3d 1, 7 (1st Cir. 2001)(citing *City of Cleburne v. Cleburne Living Ctr.,*    473 U.S. 432, 439-40 (1985)).  A "plaintiff cannot state an equal protection violation without showing that he was treated differently than similarly situated individuals were or would have been treated, because '[a] state may treat differently situated people in a different way.' " *Allen v. Cuomo* , 100 F.3d 253, 261 (2nd Cir. 1996)(citing *Schweiker v. Hogan,* 457 U.S. 569, 590, (1982)).  Therefore, to state an equal protection or gender bias claim, the plaintiff must allege facts indicating that other individuals were similarly situated and that the government treated her differently than those similarly situated. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

"As a general rule, whether items [or individuals]are similarly situated is a factual issue that should be submitted to the jury." *Harlen Associates v. Village of Mineola*  , 273 F. 3d 494, 499 (2nd Cir. 2000).  See also *Graham v. Long Island R.R.,*   230 F.3d 34, 39 (2nd Cir. 2000)("Whether two employees are similarly situated ordinarily presents a question of fact for the jury."); *Kirschner v. Zoning Bd. of Appeals of Valley Stream,*     924 F. Supp. 385, 394

(E.D.N.Y. 1996)(holding that issue of whether two shops are similarly situated is "classic" issue of fact precluding summary judgment).

While the First Circuit has not developed a precise formula for determining whether individuals or entities are "similarly situated" for equal protection purposes, the usual test "is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Dartmouth Review v. Dartmouth Coll*., 889 F. 2d 13, 19 (1st Cir. 1989). The relevant aspects to be considered in determining the similarity of situations "are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." *Id.*

One relevant aspect used by the courts to determine similarity in situations is the comparability of the duties and responsibilities of the respective individuals. "Two employees are not similarly situated where their duties and responsibilities are not the same or at least comparable." *Williams v. Frank*, 757 F. Supp. 112, 118 (D. Mass. 1991); *Columbus v. Biggio, et al*., 76 F. Supp. 2d 43, 51 (D. Mass. 1999)(The plaintiff satisfies the similarly situated requirement by alleging that "the Department of Public Works Director and other Town of Stoneham department heads," were treated differently.)

The defendants argue that plaintiff Littlewood's role as the Assessor's clerk differentiates her from the two other male members of the Board of Assessors. Memorandum in Support of Defendants' Motion for Summary Judgment at 10.D.. However, their argument ignores the fact that plaintiff Littlewood, as a member of the Board of Assessors, has the same duties and responsibilities as the other two members, thus she is similarly situated to them in her role as an Assessor. It is in this role that plaintiff Littlewood advised the selectmen that their vote

16

approving the creation of a reserve fund for the ambulance service.  It is in this role that she

confronted defendant Racicot and advised him that she and the other members of the Board of

Assessors were not going to sign off on a recap sheet which included the reserve fund.

Defendant Racicot never contacted the two male members of the Board of Assessors

(Exhibit 2, Racicot Dep.  at 31. ll. 15-18) regarding the creation of the ambulance fund even

though plaintiff Littlewood had told him that they also opposed his plan.  He subjected plaintiff

Littlewood to harassment, threats, and suspension for her principle opposition to his plan.  For

these reasons, plaintiff Littlewood claims that defendant Racicot denied her equal protection

under the law and discriminated against her because of her gender..

IV.    **DEFENDANT RACICOT DEFAMED PLAINTIFF LITTLEWOOD WHEN HE**
       **CALLED HER A LIAR AND DEPICTED HER AS AN INCOMPETENT,**
       **INSUBORDIANT EMPLOYEE.**

Plaintiff Littlewood accuses defendant Racicot of defaming her at the Financial Team

Meeting. on October 13, 2000,  by falsely claiming in front of other the other assembled town

officials that it was her fault that the town might have to borrow money.[6]  Exhibit 1, Littlewood

Dep. at 199, ll. 11-23.  She further accuses him of defaming her at the Human Resource Board

meeting of November 14, 2000, by falsely stating that she was a liar and that she did not

complete her work.

In an action for defamation, the plaintiff bears the burden of proving that (1) the

defendant made a specific statement; (2) the statement was defamatory; (3) the statement was

false; (4) the statement was published to someone other than the plaintiff; (5) the defendant was

---

[6] Defendant Racicot claims tht what he said was "we've got problems there.  Our tax recap hasn't been submitted, and Shari, as a representative of the assessors' office, can maybe explain what's going on with that."  Exhibit 2, Racicot Dep.  at 106, ll. 17-20.   Note that even if defendant Racicot's statement at the meeting was similar to the statement he remembers, it still accuses plaintiff Littlewood, as a member of the Board of Assessors, of being responsible for problems that could result in the town having to borrow money.  Moreover, defendant Racicot admits that the context in which he made the statement was a discussion of the possibility that the town will have to borrow money if the tax rate is not certified.  Exhibit 2, Racicot Dep.  at 107, ll. 5-7.

negligent in publishing the statement; and (6) the plaintiff suffered actual damages as a direct and proximate result of the defamatory communication. *Stone v. Essex County Newspapers, Inc.,* 367 Mass. 849, 854, 858, 330 N.E.2d 161 (1975).

On November 14, 2000, at the Human Resource meeting at which plaintiff Littlewood's suspension was debated, defendant Racicot told the board and the audience that plaintiff Littlewood was a liar who yelled and screamed at him. Plaintiff Littlewood states that these defamatory statements published to the Human Resource Board and to the audience by defendant Racicot are categorically false. She alleges that defendant Racicot knew that his accusations were untrue, but advanced them as a pretext concealing his unlawful retaliation against her.

As a direct and proximate result of defendant Racicot's defamatory statements, plaintiff Littlewood was forced to endure the suspension and mistrust of the people she worked with. When the atmosphere that was created by defendant Racicot's defamation became too distressful, plaintiff Littlewood was forced to resine from her position as Assessor's clerk. For these reasons, plaintiff Littlewood respectful requests that the court deny the defendants' motion for summary judgment.

## V. PLAINTIFF LITTLE SUFFERED EXTREME EMOTIONAL DISTRESS AND MENTAL ANGUISH AS A RESULT OF DEFENDANT RACICOT'S HARASSMENT AND SYSPENSION.

Plaintiff Littlewood voluntarily withdraws Count V of the Complaint.

## VI. DEFENDANT RACICOT MALICIOUSLY INTERFERED WITH PLAINTIFF LITTLEWOOD'S CONTRACTUALOR ADVANTAGEOUS BUSINESS RELATIONS.

To make out a claim for interference with advantageous business relations, the plaintiff must prove that (1) she had a business relationship or contemplated contract of economic benefit with a third party, (2) the defendant knew of the relationship, (3) the defendant interfered with the relationship through improper motive or means, and (4) the plaintiff's loss of advantage

resulted directly from the defendants' conduct. *Kurker v. Hill, 44 Mass. App. Ct.*  184, 191, 689 N.E.2d 833 (1998).  Plaintiff Littlewood can easily establish the first two elements of her claim that defendant Racicot interfered with her advantageous business relationship.  She had an advantageous business relationship with the Town of Orange—she was an employee with the title of Assessor's Clerk.  Exhibit 1, Littlewood Dep. at  29, ll. 12-18.  Defendant Racicot knew of her employment.  Exhibit 2, Racicot Dep.  at 17, ll. 18-21.   quit

Plaintiff Littlewood alleges that the poisonous atmosphere created by defendant Racicot's public harassment of her and the public nature of her suspension became so distressing to her that she was forced to give up her position as Assessor's clerk.  That other municipal employees would regard her with mistrust and suspicion after defendant Racicot publicly reprimanded her, suspended her and then labeled her a liar was a foreseeable consequence of defendant Racicot's treatment of her.  Therefore, plaintiff Littlewood has established that defendant Racicot did interfere with her advantageous business relationship with the Town of Orange.

Plaintiff Littlewood can also establish that defendant Racicot used "improper means or motive" to interfere with her employment as the Assessor's clerk.  Courts have equated an improper motive or means with "a spiteful, malignant purpose, unrelated to the legitimate corporate interest" *Clement v.  Rev-Lyn Contracting Co.,*  40 Mass. App. Ct. 322, 325, 663 N.E.2d 1235 (1996).  A supervisor, acting within the scope of his responsibilities in disciplining an at-will employee "is privileged to do so unless acting with 'actual malice.'"  *Id.*  Malice has been defined by Massachusetts courts as acting with the unlawful purpose of harming the plaintiff, "without right or justifiable cause."  See *Anzalone,*  403 Mass. 119, 526 N.E.2d 246, 248-49 (quoting *Walker v. Cronin,*  107 Mass. 555, 562 (Mass.1871)).  Massachusetts courts have

expanded this definition of malice to include intentional retaliation.  See *Speen v. Crown Clothing Corp.,*  102 F.3d 625, 635 (1st Cir.1996); *Comey v. Hill,*  387 Mass. 11, 438 N.E.2d 811, 816-17 (1982).  Unlawful acts--including unlawful gender discrimination, threats, and retaliation—cannot be considered to be within the scope of a supervisor's duties.  *Presto v. Sequoia Sys., Inc.,*  633 F. Supp. 1117, 1122 (D.Mass.1986). Therefore, in alleging that the defendant retaliated against her for engaging in free speech and expression critical of his plan to create a reserve fund for the ambulance service, plaintiff Littlewood has made out a prima facie case of tortious interference.  She hereby incorporates by reference her arguments that defendant Racicot's stated motive for harassing her and then suspending her was pretextual; that his true motive was unlawful retaliation for engaging in protected speech.   For these reasons, plaintiff Littlewood respectfully urges the court to deny the defendants' motion for summary judgment.

## CONCLUSION

For the reasons stated above the plaintiff respectfully requests that the court deny the defendants' motion to for summary judgment.

DATED: February 18, 2005                              Respectfully submitted,
                                                      The Plaintiff
                                                      By Her Attorney


                                                      Caroline Carrithers
                                                      93 Intervale Road
                                                      Orange, Massachusetts 01364
                                                      978 544-2574
                                                      BBO #643247