```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS


SHARI LITTLEWOOD,         )
         Plaintiff        )
                          )
         v.               )  CIVIL ACTION NO. 03-30309-MAP
                          )
MICHAEL J. RACICOT, former)
Town Administrator for the)
Town of Orange, and the TOWN)
OF ORANGE,                )
         Defendants       )
```

### MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Docket No. 19)

August 29, 2005

PONSOR, U.S.D.J.

## I. INTRODUCTION

Shari Littlewood ("plaintiff") has filed a complaint in six counts against Michael Racicot ("Racicot" or "defendant") and the Town of Orange ("Town"), offering various constitutional, statutory and common law theories.

Plaintiff's claims arise from a three-day suspension in 2000 imposed by her former supervisor, defendant Racicot, while she was working for the Town of Orange. She has brought the suit despite the fact that the suspension was quickly rescinded and she received full back pay. Defendants have moved for summary judgment on all six counts.

Prior to oral argument, plaintiff voluntarily withdrew

her claim for intentional infliction of emotional distress (Count V) and withdrew her claim for gender discrimination (Count II) during argument. Of the four remaining claims, only Count I, which offers a cause of action for violation of the plaintiff's First Amendment rights, provides any basis for federal jurisdiction. Since, as will be seen, the facts of record would not permit any reasonable factfinder to return a verdict for plaintiff on this cause of action, the court will order entry of summary judgment on this claim and will exercise its discretion to dismiss the remaining purely state law counts.

## II. FACTUAL BACKGROUND

The facts below are viewed in the light most favorable to the plaintiff; all reasonable inferences are drawn in her favor.

In March of 1999, plaintiff was elected to the Board of Assessors for the Town of Orange. A few months later, in May of 1999, plaintiff was hired as the town assessors' clerk -- a paid, clerical position -- by the Board of Selectmen. Racicot, Town Administrator, was responsible for supervising the plaintiff in her role as the assessors' clerk. Plaintiff's dual role as member of the Board of Assessors and also its paid clerk became the seed of the controversy to come.

The problem began to take shape in September of 2000, when Racicot recommended to the Board of Selectmen that they set up a reserve account for the town's ambulance service. The Board of Selectmen approved the recommendation and voted to set aside a required one-time infusion from the town's General Fund to start the reserve account.

As assessors' clerk, the plaintiff was responsible for preparing the town's "recapitulation sheet" (the "recap sheet"). This form compiled the town's projected revenues and appropriations, which had to be submitted to the State Department of Revenue each year. Once completed, the recap sheet had to be signed by at least two members of the town's Board of Assessors before it was submitted.

Plaintiff had two somewhat conflicting roles in relation to the recap sheet: as clerk she had the responsibility to prepare it; as a member of the Board of Assessors, she had to review and, if she approved the sheet, to sign it. Racicot rightly expected the plaintiff to complete the recap sheet in her role as clerk, since preparation of the form was part of her job.

Plaintiff, however, was reluctant to prepare the recap sheet, since it included reference to the reserve account for the town's ambulance and, in her role as a member of the Board of Assessors, she disagreed with the Selectmen's

decision to set up the reserve in the first place. Indeed, as a member of the Board of Assessors, the plaintiff spoke out at an October 4, 2000 Board of Selectmen meeting, offering her opinion that creating the account would force a tax increase on the Town.

Racicot asked the plaintiff, in her role as clerk, for the completed recap sheet several times between Monday, October 9, 2000 and Thursday, October 12, 2000.  In response, plaintiff stalled.  On October 12, 2000 the plaintiff told Racicot, in effect, that she and the other members of the Board of Assessors were not going to sign the recap sheet if it would necessitate a tax increase, because tax increases generally required a town meeting vote.  She still refused to compile the sheet in her role as clerk.

On the morning of Friday October 13, 2000 when Racicot asked for the recap sheet again, the plaintiff walked out of his office in lieu of responding.  Later that morning Racicot went to the plaintiff's office to inquire once again about the completion of the recap sheet.  At that time, without informing Racicot that the draft recap sheet omitted reference to the reserve fund, she indicated that the sheet was in her out box, and Racicot took the document.

That Friday afternoon, the plaintiff and Racicot participated in a financial team meeting with several other

town officials. The plaintiff claims Racicot told the group that the town was having funding problems, and he would let the plaintiff explain why that might be. Plaintiff interpreted this remark as an accusation that her delay in composing the recap sheet had placed the town in an awkward financial position.

Harsh words ensued, and Racicot directed the plaintiff to meet with him privately after the team meeting. The upshot of this meeting was that Racicot issued the plaintiff a three-day suspension for "insubordination" (yelling at him during the financial meeting) and "failure to perform duties" (preparing the recap sheet inaccurately, incorrectly, and late).

The plaintiff was suspended from October 17, 2000 to October 20, 2000. On October 18, 2000, the Board of Selectmen voted to rescind their original decision to set aside $166,799 to set up the ambulance reserve account, because they were advised this action would likely commit the Town to a tax increase.

The plaintiff grieved her suspension before the Selectmen, and was referred to the Human Resources Board. At the Board hearing on November 14, 2000, Racicot stated that he suspended the plaintiff because she did not perform her duties as clerk by failing to complete the recap sheet

properly and because she yelled at him in front of their colleagues.  Subsequently, the Board rescinded the plaintiff's suspension and awarded her full back pay.

The plaintiff admits that the recap sheet she prepared and presented to Racicot omitted a line item for the ambulance reserve account and that one item on the sheet had to be changed due to an error.[1]  The plaintiff nevertheless contends that Racicot's reasons for suspension were a pretext and that he actually suspended her because she opposed the ambulance reserve account in her role as a member of the Board of Assessors.  The plaintiff contends that her temporary suspension constituted a violation of her First Amendment right to express herself on a matter of public concern.  She has also brought suit under the Massachusetts Civil Rights statute and under various common law theories.

### III. DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

[1] Defendants contend that the sheets contained numerous other deficiencies, but the court will accept as true only the items plaintiff has conceded.

Fed. R. Civ. P. 56(c).  A genuine factual issue is one that can reasonably be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The court, in weighing a motion for summary judgment, must consider all the facts in the light most favorable to the nonmoving party, "drawing all reasonable inferences in that party's favor."  Thomas v. Eastman Kodak Co., 183 F.3d 38, 42 (1st Cir. 1999), cert. denied, 528 U.S. 1161 (2000).

Once the moving party shows that no genuine issue of material fact exists, the burden shifts to the nonmoving party to establish existence of issues of fact that affect the outcome of the litigation. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994)(citations omitted).  There must be sufficient evidence favoring the nonmoving party to create a trial-worthy issue. Anderson, 477 U.S. at 249.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id.

A. First Amendment Claim (Count I)

To establish a prima facie case of a First Amendment violation in connection with a suspension from public employment, the employee must show that she was involved in some protected activity and that such activity was a motivating factor in an adverse employment action. Conward

-7-

v. Cambridge School Committee, 171 F.3d 12, 22 (1st Cir. 1999). Furthermore, a public employee who is suspended for speech or expressive conduct must have engaged in speech or conduct that is a "matter of public concern" for the suspension to constitute a violation of the First Amendment. Meaney v. Dever, 326 F.3d 283, 286-87 (1st Cir. 2003) (citing Connick v. Myers, 461 U.S. 138, 146 (1983)).

"[T]he First Amendment protects only speech itself and other expressive conduct that is 'inten[ded] to convey a particularized message' under circumstances in which 'the likelihood [i]s great that the message would be understood by those who view[] it.'" Conward, 171 F.3d at 22 (quoting Spence v. Washington, 418 U.S. 405, 410-11 (1974)) (per curiam); see also Meaney v. Denver, 326 F.3d 283, 287 (1st Cir. 2003) (quoting Texas v. Johnson, 491 U.S. 397, 404 (1989)).

The plaintiff contends that her First Amendment rights were violated because Racicot suspended her for her opposition to the establishment of the reserve account. The flaw in this argument is that it is entirely unsupported by the record.

The undisputed fact is that, several times between Monday October 9, 2000 and Thursday, October 12, 2000,

Racicot asked the plaintiff, in her clerical role, simply to complete the recap sheet. In response, plaintiff stalled. This flat avoidance of her clerical duties, in the face of repeated requests, could not be interpreted by any reasonable factfinder as constituting some form of protected expression.

On Friday, October 13, 2000, when Racicot called the plaintiff into his office to inquire yet again about the completed recap sheet, the plaintiff responded by walking out of his office. Again, no protected expression can be inferred from this course of conduct. While plaintiff's two roles may have placed her in an awkward position, no reasonable factfinder could conclude that Racicot's repeated requests that she perform her job as clerk implicated, let along infringed, her rights under the First Amendment.

Moreover, nothing in the record supports the conclusion that Racicot's requests for the recap sheet, or his ultimate suspension of her for stalling and ultimately performing the job deficiently, constituted some form of retaliation against the plaintiff for her public opposition the establishment of the reserve fund. Plaintiff does not contend that by performing her clerical task in drafting the recap sheet she would have lost the opportunity to decline to sign the sheet in her role as an elected member of the

Board of Assessors.

It is undisputed that the preparation of the recap sheet was an important responsibility of the plaintiff in her role as clerk. It is further undisputed that she disregarded her supervisor Racicot's several requests that she prepare the sheet and that she ultimately submitted it in a form that, indisputably, was inaccurate and incomplete. Thereafter, the defendant suspended her for three days. The record reveals nothing more than that the plaintiff failed to do her job, and that Racicot disciplined her as a result. No First Amendment violation can be distilled from this set of facts.[2]

B. <u>State Law Claims.</u>

Defendants' entitlement to summary judgment on the plaintiff's sole existing federal claim gives this court discretion to dismiss the remaining state law claims, without prejudice to their filing in state court. 28 U.S.C. § 1367. <u>Gonzalez-De Blasini v. Family Dep't.</u>, 377 F. 3d 81, 89 (1st Cir. 2004). Exercising this discretion, the court will order dismissal of the counts offering claims under

---

[2]It is also undisputed that the three-day suspension was rescinded less than a month after it was imposed, and plaintiff received full back pay. Without in any way intending to minimize the importance of protecting First Amendment rights, it seems obvious that the center of gravity of this case, if one exists, must lie in the state law claims.

-10-

state statutory or common law.[3]

## IV. CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is hereby ALLOWED on the plaintiff's claim in Count I for a First Amendment violation. Counts II and V are ordered dismissed with the agreement of the plaintiff's counsel. All remaining claims are hereby ordered dismissed without prejudice to re-filing in state court. This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U.S. District Judge

---

[3] In dismissing the state law claims the court, of course, offers no opinion as to their substantive viability. Defendants' vigorous arguments for summary judgment on these counts may be addressed in due course in the state forum, if plaintiff chooses to file there.